UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ALEKSANDER ALEKSOV,<br><br>                Defendant. | Criminal No. 08-057-M (AK) |

## MEMORANDUM OPINION

The Government asks this Court to order the involuntary medication of defendant Aleksander

Aleksov ("Defendant" or "Aleksov"), who suffers from mental illness, to render him competent to

stand trial.  Pursuant to *Sell v. United States*, 539 U.S. 166, 180, 123 S.Ct. 2174, 156 L.Ed.2d 197

(2003), this Court must consider whether involuntary medication is medically appropriate and

necessary to significantly further important government interests.  Upon consideration of the

pleadings, the record, and the arguments and evidence presented at the April 20, 2009 *Sell* hearing,

the Court concludes that the Government has shown by clear and convincing evidence[1] that the

standards under *Sell* have been met, and involuntary medication is required.  The Government's oral

motion to involuntarily medicate the Defendant is therefore **granted**.

---

[1] Though the D.C. Circuit has not addressed the standard of proof applicable to a *Sell* hearing, other circuits and at least one district judge on this Court have approved of the use of the clear and convincing standard. *See United States v. Austin*, No. 06-368, 2009 WL 910187, at *2 n. 3 (D.D.C. April 6, 2009) (noting and applying the clear and convincing standard used by the Tenth and Second Circuits.)

I.      **Background**

On January 28, 2008, it is alleged that Aleksov approached two uniformed Secret Service officers just outside the gates of the White House and stated that he wanted to kill the president. (Govt.'s Mem. [11] at 1.)  When asked to repeat what he had just said, Aleksov allegedly repeated the statement.  (*Id.*)  The Defendant was arrested for making threats against the president, in violation of 18 U.S.C. § 871.  A search incident to arrest revealed a small knife among his personal belongings.  (*Id.*)  The Defendant was arraigned on January 29, 2008.

On February 6, 2008, the Court ordered the Defendant committed to the Attorney General for the purpose of a competency evaluation.  The Defendant was evaluated at the Federal Medical Facility Devens in Ayer, Massachusetts, and the forensic report was authored by Shawn E. Channell, Ph.D, on April 9, 2008.  (*See* Forensic Report [12].)  The report concluded that Defendant's delusional beliefs caused Defendant not to have a rational understanding of court proceedings and that Defendant was not capable of assisting his attorney in his defense.  (*Id.* at 8.)  Dr. Channell further noted that because Defendant did not have any insight into his illness and was opposed to taking medication, involuntary medication might need to be pursued in the future to restore competency.  (*Id.*)  The report recommended that Defendant be committed for further evaluation and treatment for restoration of competency.  (*Id.*)

On May 19, 2008, this Court held a competency hearing and subsequently found Defendant to be incompetent.  The Court further ordered that Defendant be returned to the custody of the Attorney General for further treatment and a competency restoration study.  Defendant was evaluated at the Federal Medical Center in Butner, North Carolina.  In a report dated November 13, 2008 that was authored by Adeirde Stribling, Ph.D. and Kwanna Williamson, M.D., Defendant was diagnosed as Schizophrenic, Paranoid Type.  (*See* Forensic report [7] at 9.)  The report found that Defendant

requires treatment with antipsychotic medication, that his is not currently competent to consent to or refuse such treatment, and that no less intrusive alternatives are available to address his needs. (*Id.* at 19.)  The report further concluded that there is a substantial probability[2] that Defendant's capacity can be restored with a period of treatment with antipsychotic medication.  (*Id.*)

At a November 20, 2008, Competency Status Hearing, Defendant orally opposed involuntary medication and requested a *Sell* hearing.  The Court ordered briefing and held a *Sell* hearing on April 20, 2009.  At the hearing, the Government presented testimony from Dr. Stribling, staff psychologist and Dr. Williamson, staff psychiatrist, via video-conference from the Federal Medical Center at Butner.  Dr. Stribling, who the Court qualified as an expert in the area of determining competency, testified that in her opinion and to a medical degree of certainty, Defendant suffered from Schizophrenia, Paranoid type.  In particular, Dr. Stribling testified that Defendant suffers from bizarre delusions that are, at least in part, intertwined with his understanding of the criminal case against him and that Defendant is unable to separate his delusions from the case.  The doctor further testified that Defendant's preoccupation with his delusions leave him below the threshold for competency, but that it is substantially likely that medication will significantly improve his ability to aid counsel and understand the nature of the case.  Dr. Stribling also testified that potential side effects from the proposed medication can be monitored and, if necessary, treated with other medication or by stopping the treatment periodically.  Dr. Williamson, who was qualified by the Court as an expert in the diagnosis and treatment of mental illness, testified that treatment with antipsychotic medication was medically necessary and that possible side-effects could be monitored and targeted with other medication if needed.  Dr. Williamson opined that the probability of success

---

[2]  The Report surmised that expected efficacy in this case should approach approximately 70%.  (*Id.*)

of treatment would approach 70%.

## II.      Discussion

The government may administer antipsychotic medication to render a mentally ill defendant competent to stand trial on serious criminal charges if: (1) doing so advances important governmental interests to include bringing to trial an individual accused of a serious crime and assuring him of a fair trial; (2) the medication is substantially likely to render the defendant competent and substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense; (3) alternative less intrusive treatments are unlikely to achieve the same result; and (4) administration of the medication is medically appropriate. *Sell v. United States*, 539 U.S. 166, 180, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003).

On the first factor, whether involuntary medication will advance an important governmental interest such a bringing to trial an individual accused of a serious crime, the Court finds that the important governmental interest of bringing Defendant, who is charged with the very serious crime of threatening to kill the President of the United States, to trial will be advanced by involuntary medication.   In making this determination, the Court has conscientiously considered the circumstances of the instant case and Defendant's current situation.  As was noted by defense counsel at the *Sell* hearing and in Defendant's Opposition, Defendant has been confined for a substantial period of time – what is now approximately sixteen months.  As roughly calculated by defense counsel, Defendant would likely face a sentencing range of anywhere from 10 to 33 months based on the guidelines.  Defendant has therefore already served a considerable portion of a possible sentence should he be convicted.  Moreover, a plea bargain might further reduce the sentence to the

point where a sentence of time served and supervised release would be a realistic possibility.  It is unclear, however, whether Defendant, without medication rendering him competent, would within a reasonable time period regain his liberty by being able to stand trial and, if convicted, serve out his sentence.  Magistrate Judge Facciola confronted a similar situation in *United States v. Orloski*, 554 F. Supp.2d 4 (D.D.C. 2008), and concluded that where there was no certainty of the defendant's civil commitment and where the defendant's resistance to involuntary medication was based on a delusional system, involuntary medication was necessary for a prompt resolution of the matter and was ultimately in the interest of both the government and the defendant.  *See id.* at 8.  This Court concurs with and adopts Judge Facciola's apt analysis of the competing interests in that case, whose facts and posture significantly mirror the instant case.  *See id.* at 7-8 (describing the conflict inherent in an incompetent defendant refusing medication and therefore facing the possibility of confinement beyond a potential sentence for the crime with which he has been charged and concluding that involuntary medication was ultimately in the defendant's interest.)  The Court therefore concludes that the important governmental interest in bringing Defendant to trial will be advanced by involuntary medication, and that a restoration of competency will allow for a prompt resolution of the matter.  This is ultimately in Defendant's own interest.

There is little argument from Defendant rebutting the Government on the second through fourth factors, and Defendant did not present any rebuttal evidence at the *Sell* hearing.  The Court is convinced that all three factors have been satisfied by the Government by clear and convincing evidence.  As detailed in the November 13, 2009 forensic report and confirmed through expert testimony at the *Sell* hearing, the antipsychotic medication proposed for treatment is substantially likely to render the Defendant competent to stand trial.  (*See* Forensic report [7] at 15, 19.)  The doctors have concluded that the efficacy of such treatment would approach 70%.  (*Id.* at 19)

Furthermore, both doctors testified and concluded in their report that potential side effects could be monitored closely and mitigated upon the first showing of symptoms. (*Id.* at 15-19.) The Court therefore finds that the administration of such drugs is substantially unlikely to have side effects that would interfere significantly with the Defendant's ability to assist counsel in conducting a trial defense. Alternative less intrusive treatments to medication would not be likely to achieve the same results, as the doctors have testified and concluded that medication is the *only* primary treatment for Defendant's condition that would render him competent to stand trial. (*See id.* at 15.) Finally, the Court concludes that the administration of medication is medically necessary, as it is the common and standard course of treatment for Defendant's psychotic condition. (*Id.*)

### III.    Conclusion

For the foregoing reasons, the Court will order that the Defendant be involuntarily medicated. The Government, in consultation with the Federal Medical Center, will be required to provide the Court with a detailed order that sets forth the protocol the Medical Center plans to follow in medicating the Defendant involuntarily and the time line for apprising the Court of the status of progress made. Such protocol shall be submitted to the Court within 10 days of the date of this Memorandum Opinion.

An Order consistent with this Memorandum Opinion is filed contemporaneously herewith.

Dated: May 7th, 2009

                                        /s/
                                        ALAN KAY
                                        UNITED STATES MAGISTRATE JUDGE